J-A08026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT THOMAS NAUSS | : | |
| | : | |
| Appellant | : | No. 997 EDA 2023 |

Appeal from the PCRA Order Entered April 5, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003770-1977

BEFORE: BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.: **FILED OCTOBER 4, 2024**

Appellant, Robert Thomas Nauss, appeals from an order entered on April 5, 2023, in the Criminal Division of the Court of Common Pleas of Delaware County that dismissed, without a hearing, his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Specifically, the PCRA court concluded that Appellant's petition was untimely and did not validly invoke an exception to the PCRA's jurisdictional one-year time bar. We affirm.

We obtained the following recitation of the underlying facts and procedural history in this matter from our prior non-precedential memorandum decision that affirmed the dismissal of one of Appellant's earlier petitions for collateral relief.

> On December 9, 1977, a jury found Appellant [] guilty of murder in the first degree [in the death of Elizabeth Lande]. Following the denial of post-trial motions, the trial court sentenced [Appellant]

to a term of life imprisonment [without parole].  On December 17, 1981, the Pennsylvania Supreme Court affirmed [Appellant's] judgment of sentence.  *See Commonwealth v. Nauss*, 442 A.2d 661 (Pa. 1981) [(*per curiam*)].

Appellant escaped from prison in 1982 [and] remained a fugitive until his capture in late 1990.  On January 15, 1997, Appellant filed his first *pro se* PCRA petition.  The PCRA court appointed counsel who filed an amended petition.  Following a hearing on the merits, the PCRA court denied the petition on December 31, 1997.  On November 10, 1998, this Court affirmed the dismissal of the PCRA petition.  *See Commonwealth v. Nauss*, 734 A.2d 438 (Pa. Super. 1998).  On June 3, 1999, the Pennsylvania Supreme Court denied leave to appeal.  *See Commonwealth v. Nauss*, 739 A.2d 542 (Pa. 1999).

On March 28, 2016, Appellant filed [a second] *pro se* PCRA petition.[]  On May 20, 2016, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pennsylvania Rule of Criminal Procedure 907.  *See* Pa.R.Crim.P. 907(1).  Appellant did not file a response.  On September 19, 2016, the PCRA court dismissed the petition as untimely.

Appellant subsequently filed a timely *pro se* notice of appeal.[]  The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal, but did issue an opinion on October 14, 2016.  *See* Pa.R.A.P. 1925.  [This Court affirmed the dismissal of Appellant's second petition for collateral relief on May 12, 2017].

*Commonwealth v. Nauss*, 2017 WL 1969741 (Pa. Super. 2017)

(non-precedential decision) (footnotes omitted).

Appellant filed his current PCRA petition on April 6, 2021.  As grounds

for relief, Appellant cited the ineffective assistance of trial counsel, together

with  constitutional  violations  which  allegedly  undermined  the

truth-determining process to such an extent that no reliable adjudication of

guilt or innocence could have taken place.  Counsel entered an appearance on

- 2 -

behalf of Appellant and filed an amended petition on June 14, 2022. In the amended petition, counsel acknowledged that Appellant's most recent petition was facially untimely but invoked the governmental interference and the newly-discovered facts exceptions to the PCRA's timeliness requirement. **See** 42 Pa.C.S.A. §§ 9545(b)(1)(i) and (ii). After determining that Appellant's petition was untimely, that it did not meet any exception to the PCRA's timeliness requirements, and that the court therefore lacked jurisdiction to entertain Appellant's claims, the PCRA court, on February 22, 2023, issued notice pursuant to Pa.R.Crim.P. 907 that it intended to dismiss Appellant's petition without a hearing. Thereafter, Appellant filed a response to the Rule 907 notice and the court dismissed Appellant's petition by order entered on April 5, 2023. This timely appeal followed.[1]

Appellant raises two claims on appeal.

Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish violations of Appellant's constitutional rights under the United States and Pennsylvania Constitutions, where Appellant raised the claims of [] prosecutorial misconduct, willful failure by the government to provide [materials pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963)], obstruction of justice by the government, and newly discovered evidence that was undiscoverable due to the government's cover up?

Whether the PCRA court erred by failing to grant an evidentiary hearing?

---

[1] Appellant filed his notice of appeal on April 20, 2023. Since the PCRA court believed the issues to be raised on appeal were clear from the record, it did not issue an order pursuant to Pa.R.A.P. 1925(b) but filed an opinion on June 20, 2023. **See** PCRA Court Opinion, 6/20/23, at 2.

- 3 -

Appellant's Brief at 4.

We apply a familiar standard of review to Appellant's challenge to the order dismissing his petition for collateral relief.

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (cleaned up). We are also mindful that Appellant alleges that the PCRA court erred in refusing to convene a hearing on his claims. "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Sneed*, 45 A.3d 1096, 1106 (Pa. 2012) (quotation and citation omitted).

"[I]f a PCRA [p]etition is untimely, a trial court has no jurisdiction to entertain the petition." *Commonwealth v. Hutchins*, 760 A.2d 50, 53 (Pa. Super. 2000) (citations omitted). The PCRA provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). A judgment becomes final for PCRA purposes "at the conclusion of direct review, including discretionary review in the Supreme Court of the

United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

Here, the Pennsylvania Supreme Court affirmed Appellant's judgment of sentence on December 17, 1981. Therefore, Appellant's judgment of sentence became final on February 15, 1982, after the then-applicable 60-day period to file a petition for a writ of certiorari with the United States Supreme Court expired. *See* U.S.Sup.Ct.R. 20 (former).

Appellant filed his *pro se* PCRA petition on April 6, 2021. Because Appellant filed his petition nearly four decades after his judgment of sentence became final, the petition is facially untimely. Nevertheless, Pennsylvania courts may consider an untimely PCRA petition if the petitioner pleads and proves one of three exceptions set forth under Section 9545(b)(1). These exceptions are as follows:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or,
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Our Supreme Court has emphasized that "it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 947 A.2d 714, 719 (Pa. 2008) (citation omitted).

As noted above, Appellant's amended PCRA petition asserted that he validly invoked the governmental interference exception and the newly-discovered facts exception to the PCRA's one-year time bar. For these reasons, Appellant contends that the PCRA court erred in dismissing his petition as untimely without the benefit of a hearing.

Appellant's efforts to overcome the PCRA's jurisdictional timeliness requirements focus upon the statements of his private investigator, Michael Riggs, who claims to have interviewed William Standen, a central Commonwealth witness at Appellant's 1977 trial, and Albert Goldy, the alleged victim of a criminal assault perpetrated by Standen in 1971. Appellant attached Riggs' statements to his amended petition. According to one of the statements, Goldy told Riggs that, in 1971, Standen shot Goldy in the back of the head with a shotgun but that the case was never prosecuted. Goldy also said that two Delaware County detectives approached him, gave him $1,000.00, and that he never heard anything more about the charges against

Standen.[2]   Another affidavit prepared by Riggs states that the Delaware County District Attorney's office "gave Standen a deal" regarding the assault charges involving Goldy in exchange for his cooperation and testimony in Appellant's case.[3]

_____

[2] Riggs' affidavit summarizing his interview with Goldy stated in relevant part:

> I, [Riggs], a Licensed Private Investigator, in New Jersey, Pennsylvania, and Florida [do] solemnly swear that on March 30, 2022, I interviewed [Goldy at his place of employment, where he works as a salesman].  In the interview[,] Goldy advised me that in December 1971, he got into an argument with [Standen].  The argument escalated and Standen shot him in the back of his head and back with a shotgun.  Standen was arrested and charged with what Goldy believed to be Attempted Murder.  The case was never prosecuted, as Standen fled the Commonwealth.  Several years later, before [Appellant's] trial began, Goldy stated that two Delaware County Detectives approached him [where he was employed at the time].  They asked him what it would take to drop the charges against Standen.  Goldy explained that he wanted $3,500.00 to cover his medical expenses from the shooting.  He was told that that was not acceptable and offered him $1,000.00. A few days later, Standen arrived at [Goldy's place of employment] accompanied by the detectives.  Goldy was given $1,000.00 in cash and never heard anything further about the charges.

Appellant's Amended PCRA Petition, 6/14/22, at Attachment 2.

[3] In relevant part, Riggs' affidavit summarizing his interview with Standen provided:

> I, [Riggs], a Licensed Private Investigator, in New Jersey, Pennsylvania and Florida do solemnly swear that on December 2, 2018, accompanied by Robert T. Zimmerman, a Licensed Private Investigator, in New Jersey and Pennsylvania, conducted an interview of [Standen in Hammonton, New Jersey].  In the interview Standen advised of his involvement [in Appellant's trial]

*(Footnote Continued Next Page)*

Based upon the statements of his private investigator, Appellant contends that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963) by concealing material exculpatory and impeachment evidence regarding Standen and the testimony he offered at trial.[4] According to Appellant, the Commonwealth: (1) failed to disclose to the defense at the time of trial the full extent of Standen's cooperation agreement; (2) failed to correct Standen's testimony denying the existence of a "deal" or any cooperation agreement; and, (3) failed to reveal that police officials allegedly paid Goldy.

Appellant maintains that the Commonwealth's **Brady** violations fall within the exceptions to the PCRA's one-year jurisdictional filing period which

---

and stated that he was given a deal by the [Delaware County] District Attorney for his cooperation and testimony [against Appellant].

Appellant's Amended PCRA Petition, 6/14/22, at Attachment 1.

[4] Appellant's brief also alludes to a claim alleging that the Commonwealth concealed a close relationship between its forensic expert at Appellant's trial and the Delaware County District Attorney, guarded the expert's background, and failed to disclose that the expert was the subject of a federal investigation in 1965. **See** Appellant's Brief at 7 and 14-15. Appellant, however, nowhere addresses when and how he learned of this previously undisclosed material or why this information could not, with reasonable diligence, have been discovered sooner. Instead, Appellant simply offers generalized assertions of nondisclosure and a governmental cover up aimed at subverting his ability to expose the expert's alleged bias before the jury. Because this claim is woefully underdeveloped, we deem it to be waived. **See Commonwealth v. Arnolt**, 294 A.3d 364, 379 (Pa. 2023) (undeveloped claim subject to waiver where it is presented only through generalized assertions that lack cogent legal presentation and argument).

are set forth at Sections 9545(b)(1)(i) and (ii). With reference to Section 9545(b)(1)(i) (the governmental interference exception), Appellant argues that his failure to raise his claims previously was the result of interference by government officials, *i.e.*, the Commonwealth's violation of its continuing obligation to disclose **Brady** material. **See** Appellant's Brief at 13. With respect to Section 9545(b)(1)(ii) (the newly-discovered facts exception), Appellant asserts that Standen's recent acknowledgement of a "deal" with the Delaware County District Attorney's office and Riggs' disclosure of an alleged police payment to Goldy constitute previously unknown information which triggered the newly-discovered facts exception. **See id.** at 9.

In the proper circumstances, **Brady** violations can implicate both the governmental and newly-discovered facts exceptions. Our Supreme Court has made clear that, "a **Brady** violation may fall within the governmental interference exception, [but] the petitioner must [nonetheless] plead and prove [that] the failure to raise the claim previously was the result of interference by government officials, and [that] the information could not have been obtained earlier with the exercise of due diligence." **Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008), *citing* **Commonwealth v. Breakiron**, 781 A.2d 94, 98 (Pa. 2001). Moreover, the newly-discovered facts exception codified at Section 9545(b)(1)(ii) "requires [a petitioner to allege and demonstrate that] the facts upon which the **Brady** claim is predicated were not previously known to the petitioner and could not

have been ascertained through due diligence." ***Abu-Jamal***, 941 A.2d at 1268, *citing **Commonwealth v. Lambert***, 884 A.2d 848, 852 (Pa. 2005).[5] We now address whether Appellant's claims surrounding Standen's cooperation agreement and the alleged police payment to Goldy (in that order) validly triggered the timeliness exceptions set forth at Sections 9545(b)(1)(i) and (ii).

At Appellant's trial, Standen began his testimony by explaining that, although no promises were made in exchange for his information in the death of Elizabeth Lande, the Delaware County District Attorney's office agreed to help him resolve outstanding charges that were pending against him. ***See*** N.T., 12/2/77, at 125-126. On cross-examination, Standen explained that he had been charged with criminal assault on December 17, 1971 for shooting Goldy. He remained a fugitive on those charges until July 1977 when he was arrested by officers from the Philadelphia Police Department. Standen then

---

[5] In ***Commonwealth v. Bennett***, 930 A.2d 1264, 1271 (Pa. 2007), our Supreme Court clarified that Section 9454(b)(1)(ii)'s exception **does not** contain the same requirements as a ***Brady*** claim, noting "[the Supreme Court] made clear the exception set forth in [Section 9454](b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to [the petitioner], nor could they have been ascertained by due diligence." ***Bennett***, 930 A.2d at 1271. In practical terms, ***Bennett's*** clarification of Section 9454(b)(1)(ii) precludes us from considering, as part of our jurisdictional analysis, the impact any unknown facts would have upon a new trial.

approached the Delaware County District Attorney's office for assistance in resolving the assault charges. At the time of Appellant's trial, Standen confirmed that he was not subject to prosecution for his attack on Goldy. The subject of a police payment to Goldy was never broached at Appellant's trial.

We agree with the PCRA court that Appellant's contentions concerning the nature and extent of Standen's cooperation agreement with the Delaware County District Attorney's office do not trigger the timeliness exceptions set forth at Sections 9545(b)(1)(i) and (ii). As stated above, Standen explained to the jury at Appellant's trial that he agreed to cooperate with the prosecution and testify against Appellant in the case *sub judice* in exchange for the District Attorney's assistance in resolving the charges pending against him. Hence, the factfinder at Appellant's trial was made aware of the factual underpinning of Standen's desire to please the prosecution, his potential bias against Appellant, and the reasons his testimony might reasonably be called into question and rejected. Because the nature and extent of Standen's cooperation arrangement was disclosed by the Commonwealth and understood by Appellant, it cannot be used to invoke the governmental interference or unknown facts exceptions to the PCRA's timeliness requirements.

In challenging the PCRA court's determinations, Appellant emphasizes that Standen, during his interview with Riggs, characterized his cooperation arrangement with the Delaware County District Attorney's office - for the first

time - as a "deal." Appellant further notes that Standen denied the existence of a "deal" at the 1977 trial. Despite these circumstances, Appellant has neither alleged nor proved how Standen's first-time characterization, standing alone, could have altered, supplemented, or enhanced the substance of the impeachment evidence that was placed before Appellant's jury over four decades ago. Accordingly, Appellant's claims concerning the nature and extent of Standen's cooperation agreement with the Delaware County District Attorney's office do not resuscitate Appellant's untimely petition.

The alleged payment to Goldy, however, presents a slightly different issue. The police payment to Goldy was not addressed at Appellant's 1977 trial, so we will assume, without deciding, that this fact, at the time of trial, was neither disclosed by the Commonwealth nor known to Appellant. Nonetheless, we conclude that the PCRA court did not err in dismissing Appellant's petition as untimely since Appellant's amended petition failed to plead and prove that he exercised due diligence to discover this fact and, therefore, did not raise a genuine issue with respect to this claim that required resolution at an evidentiary hearing.

To properly invoke the governmental interference and the newly-discovered facts exceptions, a petitioner must plead and prove that facts which have been identified as previously undisclosed or unknown "could not have been obtained earlier with the exercise of due diligence." *Abu-Jamal*, 941 A.2d at 1268. Due diligence requires "neither perfect

vigilance nor punctilious care," **Commonwealth v. Shiloh**, 170 A.3d 553, 558 (Pa. Super. 2017), but demands reasonable efforts by a petitioner, under the particular circumstances, to protect his own interests and "uncover facts that may support a claim for collateral relief." **Id.** "A petitioner must explain why [he] could not have learned the [unknown or undisclosed] fact earlier with the exercise of due diligence." **Id.**, *citing* **Breakiron**, 781 A.2d at 98. Pennsylvania courts strictly enforce this principle. **See Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa. Super 2010), *appeal denied*, 20 A.3d 1210 (Pa. 2011).

In this case, the amended petition does not describe any factual investigation designed and undertaken by Appellant to uncover the alleged payment to Goldy. Moreover, the petition alleges no facts to explain why, despite reasonable diligence, Appellant could not uncover the payment earlier, particularly in view of the passage of nearly four decades between the original 1977 trial and the filing of the instant petition in 2021. Put differently, Appellant's amended petition neither pleads nor proves the efforts he undertook to discover undisclosed or unknown information or, alternatively, the pointlessness of undertaking any effort to uncover the facts which are now central to his claims. Instead, Appellant simply contends on appeal that he should not be burdened with the obligation to investigate or uncover facts pertinent to his contentions (or to explain why earlier discovery was not feasible) where the prosecution has allegedly failed to discharge its obligations

pursuant to *Brady*. *See* Appellant's Brief at 9. As the Commonwealth correctly points out, however, Appellant's argument essentially posits that a *Brady* claim displaces the requirement of due diligence, which is a mandatory component for establishing an exception to the PCRA's limitations period. *See* Commonwealth's Brief at 6. When a *Brady* violation has been asserted as grounds for invoking the governmental interference and newly-discovered fact exceptions, our Supreme Court has made clear that, in both instances, the petitioner must expressly plead and prove that the undisclosed or unknown information "could not have been obtained earlier with the exercise of due diligence." *Abu-Jamal*, 941 A.2d at 1268. Since Appellant neither pled nor proved any facts that would raise a genuine issue as to the diligence of his investigative efforts or the futility of reasonable investigation concerning the payment to Goldy, he did not validly invoke an exception to the PCRA's jurisdictional time bar.

We discern no error of law or abuse of discretion in the PCRA court's dismissal of Appellant's petition without a hearing. The record unambiguously demonstrates that Appellant's petition is patently untimely. Moreover, Appellant's amended PCRA petition did not allege facts which, if resolved in his favor, would have demonstrated that the circumstances surrounding Standen's cooperation arrangement were previously concealed or unknown, or that the payment to Goldy could not have been discovered earlier despite due diligence in the four decades that have passed since Appellant's 1977

trial. As such, the PCRA court correctly determined that Appellant's petition was not subject to a timeliness exception. Without jurisdiction, neither this Court nor the PCRA court could reach the merits of Appellant's substantive claims. Accordingly, the PCRA court, even without the benefit of an evidentiary hearing, did not err in dismissing Appellant's petition as untimely.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/4/2024